(39 Misc. Rep. 204.)

HOSMER et al. v. STANDARD SHOE MACHINERY CO. et al.

(Supreme Court, Special Term, New York County. November, 1902.)

1. ACTION AGAINST CORPORATION—INTERVENTION BY STOCKHOLDER.

In an action against a corporation which is being defended by its receiver, it is discretionary with the court whether it will permit a stockholder and creditor to intervene, and such leave will usually be refused unless it affirmatively appears that the receiver has acted fraudulently. or clearly to the detriment of the interests she was appointed to protect.

2. SAME—INTEREST OF INTERVENER.

In an action against a corporation which is being defended by its receiver, a stockholder will be refused permission to intervene when he is not interested in the contract in suit, except in so far as he is a stockholder of the corporation against whom the contract is sought to be enforced.

Action by William B. Hosmer and others against the Standard Shoe Machinery Company and others. One Beecher moved to intervene. Motion denied.

Putney, Twombly & Putney, for plaintiffs.
Stern & Rushmore, for petitioner and defendant James N. Darragh.
Wilder & Anderson, for receiver.

SCOTT, J. In the year 1899 the plaintiffs were the owners of a large proportion of the stock of the Bay State Shoe Machinery Company, a Maine corporation. The defendant Darragh proposed to in-

corporate a company in New Jersey, to be known as the Standard Shoe Machinery Company, for the purpose of acquiring the ownership of or a controlling interest in a number of shoe machinery companies, including the Bay State Company.    Under the terms of this agreement the plaintiffs were to sell their stock in the Bay State Company for a stipulated amount of the preferred and common stock of the Standard Company.    The defendant Darragh undertook that $350,000 in cash should be paid into the treasury of the Standard Company in 10 equal monthly payments.    He also agreed that the Standard Company should assume and pay the obligations and indebtedness of the Bay State Company, which the plaintiffs guarantied did not exceed $50,000. The Standard Company was incorporated.    The plaintiffs delivered their stock in the Bay State Company to the defendant Darragh, by whom it was deposited with the defendant trust company pending the consolidation of the several companies designed to be consolidated into said Standard Company.    It is claimed on the part of the defendant Darragh that a large sum of money was expended by the Standard Company in equipping and developing machines and machinery under the patents of the Bay State Company.    It transpired that the plaintiffs were the principal creditors of the Bay State Company, holding claims against that company to the amount of $42,000.    In compliance with Darragh's agreement respecting such debts, the Standard Company paid to plaintiffs $10,500 in cash, and gave its notes for $31,500, indorsed by said Darragh and one Beecher, who makes this motion to be allowed to intervene.    All but $10,500 of those notes have been paid.    Differences arose between the plaintiffs on the one hand and the Standard Company and Darragh on the other, which culminated in this action by the plaintiffs for a rescission of the contract between themselves and Darragh, in which plaintiffs offered to do all things necessary to restore all parties to their original positions, and obtained an injunction pendente lite, restraining the defendant trust company from delivering the Bay State Company stock to Darragh or the Standard Company.    The defendant Darragh and the Standard Company, by amended or supplemental answers, while denying many of plaintiffs' allegations and making countercharges against the plaintiffs, also asked that the agreement be rescinded, offering to return or make good all that had been received under it, so that all parties to the action were in the position of asking this court that the contract between plaintiffs and Darragh be rescinded.    Subsequently, and in December, 1901, the defendant McDermott was appointed receiver of the Standard Company in New Jersey, that being the state of its incorporation, and was substituted as defendant in this action in place of the company.    He seems to have entered into negotiations with the plaintiffs for a settlement and adjustment of this action, and in March, 1902, submitted to the stockholders and creditors of the Standard Company a proposition of settlement which involved the rescission of the contract upon payment by plaintiffs of the sum of $5,000.    A discussion over the proposition took place before the vice chancellor, who rejected it, and refused to permit the receiver to accept it.    Some further negotiations took place, looking, on the one hand, toward an increase of the amount to be given by the plain-

tiffs, and, on the other, to the giving of a bond by Beecher. These apparently came to nothing. Thereupon, and in May, 1902, without giving notice to any creditor or stockholder of the Standard Company, the receiver obtained from the vice chancellor an order authorizing him to settle with the plaintiffs for $10,000 and the release of an alleged claim against the Standard Company on the basis of an affirmation and confirmation of the contracts between the plaintiffs and Darragh. Under this agreement the receiver agreed to turn over to the plaintiffs all the capital stock of the Bay State Company to which the Standard Company had any claim, and all other property which the Standard Company had acquired from the Bay State Company, and all claims against Darragh and Beecher. He further agreed to give to plaintiffs access to all books and papers of the Standard Company relating to the claims of plaintiffs against Darragh and Beecher, and to aid in obtaining a decree in this action against rescission of the contract. The receiver has accordingly filed a supplemental answer asking that the contract be affirmed. By this action of the receiver the whole controversy in this action has been changed. Whereas in the beginning both parties were asking that the contract be rescinded, and the parties put back where they were before the contract was made, now all the parties to the action, except Darragh, are asking that the contract be affirmed; the plaintiffs in the meantime having received back all that they would receive if the contract were rescinded, and having also been paid in cash $31,500 of the indebtedness of the Bay State Company to them, and having retained, for what they may be worth, the notes for $10,500 made by the Standard Company and indorsed by Darragh and Beecher. In return they have paid to the receiver $10,000 in cash, and have released an asserted claim of $100,000 against the Standard Company. Beecher, who now seeks to intervene in the action, stands before the court in two aspects. He is a large stockholder in and creditor of the Standard Company, and he is an indorser upon its note held by the plaintiffs, and his right to intervene must be considered in both aspects.

Whether a stockholder should or should not be allowed to intervene in an action prosecuted or defended by a receiver is usually said to rest in the sound discretion of the court, and an application for leave to intervene will generally be denied where it is not made to appear affirmatively that the receiver has acted fraudulently, collusively, or manifestly to the detriment of the interests which he is appointed to protect. In the present case no facts are presented from which the court can determine that the receiver has not acted wisely, and for the best interests of the stockholders and creditors generally of the Standard Company. Certainly there is nothing to show that he has acted collusively or in bad faith. It is not made to appear that by the rules and practice of the court of chancery of New Jersey it is incumbent upon a receiver to give notice to any one of an application for advice and instruction from the vice chancellor, and the fact that that officer approved the settlement between the receiver and the plaintiffs affords good ground for assuming that the settlement was a proper one to be made. Furthermore, it is not necessary that the applicant should be made a party to protect any right or interest he may have

as stockholder or creditor, for the defendant Darragh is already a party, is evidently in close touch and sympathy with the applicant, and in as good a position as the applicant would be to present to the court any proper consideration in behalf of the stockholders and creditors. Because the settlement effected by the receiver does not fit in with the views and wishes of Darragh and Beecher is no proof that it may not, nevertheless, be of advantage to the stockholders and creditors generally. Beecher's claim to be allowed to intervene because he is an indorsee upon an outstanding note of the Standard Company is even less strong than his claim as a stockholder and creditor. His liability upon the note is not directly involved in this action, and, if admitted as a defendant, he could not interject a new issue into the controversy. Doubtless his position as indorsee would be better, and his defense to any action on the note would be easier, if the contract were to be rescinded than it will be if it is affirmed. But that reason is not a sufficient one to admit him as a party here. The controversy in this action is over the contract to which he is not a party, except as a stockholder in the Standard Company, and in that capacity he is represented by the receiver. The affirmation of the contract will not change the position which he now occupies as an indorser. It will leave him, as he is now, apparently liable upon the note, and certainly liable to a suit upon it. But the affirmation of the contract by a decree in this action will not, on the other hand, deprive him of any defense to the note which he now has. In that respect his position will be unchanged. My conclusion is that in any aspect of the case Beecher is neither a necessary nor a proper party to the action, and that his motion to intervene must be denied, with $10 costs.

Motion denied, with $10 costs.